UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERTHA CORRALES, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 6868 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WESTIN HOTEL MANAGEMENT LP, d/b/a The Westin Lombard Yorktown Center Hotel, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Bertha Corrales brings this suit against her employer, Westin Hotel Management LP, alleging that it discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Doc. 5. Westin moves for summary judgment. Doc. 37. The motion is granted.

**Background**

The following facts are set forth as favorably to Corrales, the non-movant, as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

Westin has employed Corrales as a housekeeper at the Westin Lombard Yorktown Center Hotel since 2008, but has not assigned her any work since July 9, 2016. Doc. 45 at ¶¶ 1, 36; Doc. 51 at ¶¶ 70-71. Westin housekeepers are expected to clean at least 17 "room credits" per eight-hour shift, with the "credits" earned for cleaning a particular room depending on the number and type of beds in the room. Doc. 45 at ¶¶ 8-9; Doc. 51 at ¶ 66; Doc. 45-2 at 36; Doc. 45-3 at 63, 126-127. From 2008 until she was attacked by a hotel guest on October 25, 2014,

1

Corrales cleaned at least 17 room credits every shift. Doc. 45 at ¶¶ 17-18. Having sustained serious physical injuries to her elbow, knee, neck, and back from the attack, she took three days off and submitted a workers' compensation claim. *Id*. at ¶ 18; Doc. 51 at ¶¶ 44-45.

Corrales returned to work three days later, on October 28, 2014, subject to the following restrictions imposed by her treating physician: no lifting, pushing, and pulling more than five pounds; no squatting, kneeling, bending, climbing, or reaching above her shoulders; and no repetitive motions. Doc. 45 at ¶ 19. The housekeeper job description, however, required standing for up to four hours; frequent walking, bending, squatting, and stretching; regular lifting of up to fifty pounds; and maneuvering carts that weigh up to 250 pounds. *Id*. at ¶ 7; Doc. 39-2 at 101-103. Due to Corrales's restrictions, Westin temporarily reassigned her from cleaning rooms to light duty work like folding towels, vacuuming floors, and stocking small items for the housekeeping department. Doc. 45 at ¶¶ 20-21, 26. Also, at Corrales's request, Westin provided her a closer parking spot and a security guard to accompany her to her car. *Id*. at ¶ 38.

Between October 2014 and June 2015, while her workers' compensation claim was pending, Corrales submitted several notes from her treating physicians that restricted her from cleaning more than 15 "rooms" per day and lifting more than ten pounds, so Westin continued to assign her light duty work. *Id*. at ¶¶ 23-24; Doc. 51 at ¶ 57; Doc. 45-3 at 19. Westin kept Corrales on light duty after she returned in July 2015 from a June 2015 knee surgery, which further limited her to sedentary and seated work. Doc. 45 at ¶ 25.

In May 2016, while still performing light duty work, Corrales visited Dr. Michael Kornblatt, who concluded that she could return to full duty after conducting an independent medical evaluation related to her workers' compensation claim. *Id*. at ¶¶ 26-27; Doc. 39-2 at 128-129. Based on Dr. Kornblatt's evaluation, Westin reassigned Corrales to cleaning rooms,

2

starting her at fewer than 17 room credits on June 3, 2016, and gradually increasing her assignments to 17 room credits by July 8, 2016. Doc. 45 at ¶¶ 28-29; Doc. 51 at ¶¶ 51, 69. During the days Corrales was assigned a reduced cleaning workload, another housekeeper had to make up her shortfall in room credits. Doc. 45 at ¶ 29.

Meanwhile, at some point in June 2016, Corrales told her supervisor, Julie Glazier, that she could clean no more than 12 room credits per shift. *Id*. at ¶ 30; Doc. 45-2 at 44-45. Corrales later provided Westin a July 7, 2016 evaluation from her treating physician, who, unlike Dr. Kornblatt, concluded that she could not clean more than 12 "rooms"; that she needed to alternate 45 minutes of standing work with 45 minutes of sedentary work; and that she could not lift, carry, pull, or push more than ten pounds. Doc. 45 at ¶ 31; Doc. 51 at ¶ 59; Doc. 39-2 at 131-132. On July 8, 2016, Corrales advised Westin Market Director of Human Resources Diane Wnek that those restrictions would "last the rest of her life." Doc. 45 at ¶ 32. Wnek responded that another physician (presumably Dr. Kornblatt) had concluded that Corrales was capable of cleaning 17 room credits. *Id*. at ¶ 30; Doc. 45-2 at 44-45. Because Corrales declined to clean 17 room credits, Wnek sent her home. Doc. 45 at ¶ 32; Doc. 51 at ¶ 52.

Westin does not always discipline housekeepers who fail to clean 17 room credits during a single shift. For example, when a group of children with autism stayed at the hotel, their rooms took longer to clean, so Westin required only 14 or 15 room credits from the housekeepers assigned to those rooms. Doc. 51 at ¶ 68; Doc. 45-3 at 127. Additionally, Westin housekeepers are not required to stay overtime if they fail to clean 17 room credits during a shift, and some housekeepers are paid by room credit rather than hourly. Doc. 51 at ¶¶ 64, 66.

On July 13, 2016, Westin Human Resources Coordinator Cindy Ojeda told Corrales that only full duty housekeeping positions were available. Doc. 45 at ¶ 33; Doc. 45-4 at 9. When

Corrales responded that she could clean only 12 "rooms," Westin redistributed her assignments to other housekeepers and did not invite her to resume her previous light duty work. Doc. 45 at ¶ 35; Doc. 51 at ¶¶ 61, 70-71. In July 2016, Corrales applied for Social Security Disability Insurance benefits, which she currently receives. Doc. 45 at ¶¶ 11-15. Although Westin's policy was to assist and evaluate ADA accommodation requests, Corrales never met with anyone at Westin to discuss potential accommodations after submitting her July 7, 2016 physician's note. Doc. 51 at ¶¶ 56, 62, 65.

Westin does not have permanent light duty positions at the hotel, but it offers light duty work to employees with temporary medical restrictions until they can return to full duty. Doc. 45 at ¶ 22. Another injured housekeeper, Veronica Washington, performed light duty work for about the same period as Corrales, but there is no evidence about where (or whether) Washington worked at Westin after June 2016. Doc. 51 at ¶ 48; Doc. 45-2 at 51-52. In addition, Westin allowed another injured housekeeper with minimal work restrictions to serve as a lobby attendant. Doc. 51 at ¶ 60; Doc. 45-3 at 23-24.

Before concluding the background, the court notes that Corrales objects to ¶¶ 22, 29, and 38 of Westin's Local Rule 56.1(a)(3) statement on the ground that they are "compound," Doc. 45 at ¶¶ 22, 29, 38, and to ¶ 21 of Westin's Local Rule 56.1(a)(3) statement on the ground that it states an "opinion"—Wnek's "hope" that Corrales would return to full duty after temporary light duty work—rather than a "fact," *id*. at ¶ 21. By failing to support her objections with developed argument or pertinent legal authority, Corrales has forfeited them. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

4

The objections fail on the merits in any event. As to the "compound" objection, Local Rule 56.1(a) requires that factual assertions be set forth in "short numbered paragraphs"—as ¶¶ 22, 29, and 38 of Westin's Local Rule 56.1(a)(3) statement are—but does not prohibit a movant from setting forth multiple facts in a single paragraph. N.D. Ill. L.R. 56.1(a). As to the opinion/fact objection to ¶ 21, Westin's assertion about how long Wnek intended to offer Corrales light duty work is a factual assertion, not an opinion. *See Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 825 (7th Cir. 2018) (explaining that an individual's "[i]ntent … is a question of fact"); *Koch v. Koch*, 450 F.3d 703, 710 (7th Cir. 2006) ("To be clear, determinations of intent involve questions of fact … .").

In addition, Corrales denies ¶¶ 22, 29, and 34 of Westin's Local Rule 56.1(a)(3) statement on the ground that they rely on facts averred in Wnek's supplemental declaration that go beyond the facts to which she testified at her deposition. Doc. 45 at ¶¶ 22, 29, 34; Doc. 39-2 at 191-193. To properly deny ¶¶ 22, 29, and 34, it is not enough for Corrales to show that Wnek failed to mention the additional facts in response to open-ended questions at the end of her deposition; rather, at a minimum, Corrales must show that the averments in Wnek's declaration contradict her deposition testimony. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 407 (7th Cir. 2008) (holding that a witness's "more fulsome testimony in his declaration cannot be said to contradict his earlier, curt response at his deposition"); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999) ("[W]here deposition testimony is ambiguous or incomplete, … the witness may legitimately clarify or expand upon that testimony by way of an affidavit."). Because this particular denial of ¶¶ 22, 29, and 34 of Westin's Local Rule 56.1(a)(3) statement does not comport with Local Rule 56.1(b)(3)(B), the court deems those paragraphs admitted to the extent Corrales does not otherwise controvert them with record evidence. *See* N.D. Ill. L.R.

56.1(b)(3)(C) ("All material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party.").

## Discussion

Corrales alleges that Westin discriminated and retaliated against her in violation of the ADA by refusing to assign her work due to her continuing medical restrictions and workers' compensation claim. Doc. 5 at ¶¶ 31-48; Doc. 46 at 3-11.

### I. ADA Discrimination

The ADA's antidiscrimination provision states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability," with the proscribed discrimination including the entity's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee." 42 U.S.C. § 12112(a)-(b). The antidiscrimination provision thus allows for both "disparate treatment *and* failure to accommodate" claims. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (citing 42 U.S.C. § 12112(b)). Corrales brings both claims. Doc. 5 at ¶¶ 26-35; Doc. 46 at 3-11.

To "survive summary judgment" on either claim, Corrales must adduce evidence sufficient for a reasonable jury to find that she is "a 'qualified individual.'" *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015); *see also Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018) (holding that the plaintiff's ADA "claims for discrimination and failure to accommodate fail at the start because he cannot demonstrate that he is a 'qualified individual'"); *compare Scheidler*, 914 F.3d at 541 ("A claim for *disparate treatment* based on disability under the ADA … requires proof[ that:] (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable

accommodation; and (3) disability was the but for cause of [the] adverse employment action."), *with ibid.* ("A claim for *failure to accommodate* under the ADA … requires proof[ that:] (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of [the] disability; and (3) defendant failed to accommodate [the] disability reasonably."). The ADA "defines the term 'qualified individual' as: 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Rodrigo*, 879 F.3d at 241 (quoting 42 U.S.C. § 12111(8)). "[I]t is the plaintiff's burden to" show that she is a qualified individual by "produc[ing] evidence sufficient to permit a jury to conclude that she [could] perform the essential functions of her job with a reasonable accommodation." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 418 (7th Cir. 2016) (internal quotation marks omitted).

It is undisputed for summary judgment purposes that Corrales has an ADA-qualifying "disability," 42 U.S.C. § 12102(1), that prevents her from cleaning 17 room credits during an eight-hour shift; standing for more than 45 minutes; and lifting, carrying, pulling, or pushing more than ten pounds. Doc. 45 at ¶ 31; Doc. 38 at 7; Doc. 46 at 4-6. However, the parties dispute: (1) whether cleaning 17 room credits is essential to the housekeeper position; and (2) if so, whether a reasonable accommodation could allow Corrales to perform that essential function. The court addresses those two issues in turn. *See Stern*, 788 F.3d at 285, 288 ("First, we identify the essential functions of the job. … We next consider if there is an issue of fact as to whether [the plaintiff] could perform the essential functions of h[er] job *with* reasonable accommodation.").

7

### A.   Whether Cleaning 17 Room Credits Is an Essential Function of the Housekeeping Position

"An essential function is a fundamental job duty required of a person in the job … ." *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(1)); *see also Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22d Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010) ("[A]n employer may specify, for legitimate reasons, multiple essential duties for a position … ."). To determine whether a job function is essential, a court must consider these factors from the applicable EEOC regulation:

> (i) the employer's judgment; (ii) written job descriptions; (iii) amount of time spent performing the function; (iv) consequences of not requiring the employee to perform the function; (v) terms of a collective bargaining agreement; (vi) work experience of prior employees in the position; and (vii) current work experience of employees in similar jobs.

*Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 854 & n.1 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(3)); *see also Rodrigo*, 879 F.3d at 242 (similar). The court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl*, 601 F.3d at 679; *see also Rodrigo*, 879 F.3d at 242 ("Although the employer's judgment is considered an important factor, it is not determinative, and we also look to evidence of the employer's actual practices in the workplace.").

Westin's stated expectations and actual practices show that cleaning 17 room credits per eight-hour shift is an essential function of the housekeeping position. As Corrales and other Westin employees testified, Westin expects housekeepers to clean 17 room credits per eight-hour shift, Doc. 45 at ¶ 9; Doc. 45-2 at 36; Doc. 45-3 at 63, 70, 126-127, and Corrales in fact cleaned 17 room credits every shift between 2008 and her October 2014 injury, Doc. 45 at ¶ 17. Westin expects that housekeepers spend the bulk of their workday cleaning their individually assigned

8

room credits. Doc. 39-2 at 101 (the job description's statement that housekeepers spend "80%" of their time "[c]lean[ing] and reset[ting] guest bedroom and bathroom areas"); *see Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (holding a function to be essential where the plaintiff spent "half of the day" performing it); *Basith v. Cook Cnty.*, 241 F.3d 919, 929 n.2 (7th Cir. 2001) ("Whether a task requires a large or small portion of an employee's time could be evidence that it is or is not an essential function.") (citing 29 C.F.R. § 1630.2(n)(3)(iii)). Although Westin's housekeeper job description does not set forth the 17-credit requirement, it does mandate various physical capabilities—standing for four hours, regularly lifting up to fifty pounds, maneuvering carts weighing up to 250 pounds, Doc. 45 at ¶ 7; Doc. 39-2 at 102—necessary to clean 17 room credits within eight hours. *See Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) (holding that "vacuuming" was an "essential function" of a housekeeping job where, although not explicitly listed in the "written job description," every hotel "supervisor testified that … vacuuming … is essential to housekeeping, and [the plaintiff] admitted that she occasionally vacuumed"); *see also Rodrigo*, 879 F.3d at 241 ("Consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.") (quoting 42 U.S.C. § 12111(8)); *Dunderdale*, 807 F.3d at 854 ("[L]ifting more than 70 pounds was an essential function of the ramp serviceman position. [The] written job description for ramp servicemen expressly states the lifting requirement, as well as illustrates how heavy lifting is a fundamental duty of the position.").

While not questioning Westin's judgment that cleaning 17 room credits per shift is an essential function of the housekeeping position, Corrales does argue that the 17-credit minimum

9

"is not strictly upheld" in practice. Doc. 46 at 8. In support, Corrales notes that Westin (1) allowed her to clean fewer than 17 room credits in June and July 2016 and (2) in at least one instance relaxed the 17-credit requirement for housekeepers assigned to clean rooms that took longer than usual to clean. *Ibid*.

Those facts do not undermine Westin's understanding that cleaning 17 room credits is an essential function of the housekeeping position. Corrales may not use her temporarily reduced workload during her ramp-up period in June and July 2016 to defeat Westin's understanding of the position's essential functions. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) ("The fact that [the employer] attempted to ease [the plaintiff's] discomfort immediately after his injuries by decreasing the number of job-site visits he was required to perform does not necessarily mean that these visits were not an essential job function. Facilitating injured workers' return to their jobs should not expose employers to future litigation."); *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1217 (10th Cir. 2012) ("[A] plaintiff cannot use her employer's tolerance of her impairment-based, ostensibly temporary nonperformance of essential duties as evidence that those duties are nonessential."); *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) ("A court must evaluate the essential functions of the job without considering the effect of any special arrangements. The voluntary accommodations that [the employer] made following [the plaintiff's] injury do not alter our assessment of the essential functions of the … position.") (alterations, citations, and internal quotation marks omitted); *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007) ("[The plaintiff] also argues [that his employer] allowed him a temporary exception from shift rotation, which demonstrates shift rotation is not essential. However, an employer does not concede that a job function is non-essential simply by voluntarily assuming the limited burden associated with a

10

temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous.") (alteration and internal quotation marks omitted). And Corrales fails to show that when Westin allowed housekeepers assigned to particularly challenging rooms to complete two or three fewer room credits, Doc. 51 at ¶ 68; Doc. 45-3 at 127, it did not require of them the same level of physical performance, or the same amount of actual work, as is required to clean 17 room credits of average difficulty. *See Ammons*, 368 F.3d at 818-19 (explaining that, although the plaintiff "could not always predict what" exactly he would be asked to do "on a given day, the job required heavy exertion and included frequent standing, climbing, walking, kneeling, and lifting" as "essential functions"); *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) ("[The plaintiff] admits that heavy lifting is required at times, and his argument that such lifting is infrequent does not preclude it from being an essential function of the job.").

Corrales also notes that Westin does not always discipline or require overtime from housekeepers who fall short of 17 room credits during a single shift. Doc. 46 at 8. But she forfeits any argument based on that fact by failing to provide pertinent record evidence (*e.g.*, how often Westin excuses the cleaning of fewer than 17 room credits) or legal authority (*e.g.*, whether and, if so, the extent to which an employer's occasional tolerance of under-performance makes a function non-essential). *See Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017) (considering arguments "wholly unsupported by developed argument citing the record and supporting authority" to be "forfeited"); *see also Basith*, 241 F.3d at 928 ("The plaintiff must offer sufficient evidence to show the employer's understanding of the essential functions of the job is incorrect … ."). Even putting aside forfeiture, a function does not cease being essential simply because the employer does not punish employees' isolated failures to perform that

11

function in every instance. *See Guzman v. Brown Cnty.*, 2016 WL 7839143, at *7 (E.D. Wis. Sept. 1, 2016) ("[I]t does not follow that just because [certain] employees were not punished, their attendance was not essential to the performance of their work. It may very well be that those employees were given leniency or excused for some other reason despite not performing an essential function of their job on a single occasion."), *aff'd*, 884 F.3d 633 (7th Cir. 2018).

For these reasons, no reasonable jury could find that cleaning 17 room credits is not an essential function of Westin's housekeeper position. Because Corrales admits that she could not perform that function without a reasonable accommodation, Doc. 45 at ¶¶ 30-32, 35; *see Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) ("[The plaintiff] was often under work restrictions that at times … prevented her from … lifting significant weight, or kept her from pushing her housekeeping cart. … [She] herself admitted that she couldn't have performed the job of housekeeping assistant under some of these restrictions, and thus she concedes that at times she was not qualified to perform the essential functions of the job."), the court next considers whether a reasonable jury could find that Corrales, if given a reasonable accommodation, could have performed that work.

  **B.**  **Whether Corrales Could Perform the Housekeeper Position's Essential Functions with a Reasonable Accommodation**

"A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). "Under the ADA, a 'reasonable accommodation' may include 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, … and other similar accommodations for individuals with disabilities.'" *Stern*, 788 F.3d at 288 (quoting 42 U.S.C. § 12111(9)(B)). Corrales "bears the burden of establishing that she could perform the

12

essential functions of the [housekeeper] position with … reasonable accommodation, and can't meet this burden if the only accommodations suggested were unreasonable." *Majors v. GE Co.*, 714 F.3d 527, 534 (7th Cir. 2013).

Corrales first contends that the restrictions in her July 7, 2016 treating physician's note—cleaning no more than 12 room credits; alternating 45 minutes of standing work with 45 minutes of sedentary work; and lifting, carrying, pulling, and pushing no more than ten pounds—together constitute a reasonable accommodation. Doc. 46 at 7, 10; Doc. 45 at ¶¶ 30-32, 35. At the same time, however, Corrales admits that an accommodation consisting of those restrictions would require other housekeepers to clean the five (17 minus 12) room credits that she could not complete if she were allowed to complete only 12. Doc. 45 at ¶ 34; Doc. 45-2 at 53. That defeats Corrales's submission that the accommodation is reasonable, as the ADA does not require an employer to "have another employee perform a position's essential function, and to a certain extent perform the job for" the plaintiff. *Majors*, 714 F.3d at 534; *see also Stern*, 788 F.3d at 290 ("EEOC guidance makes clear that an employer never has to reallocate essential functions as a reasonable accommodation, but can do so if it wishes.") (alteration and internal quotation marks omitted); *James v. Hyatt Regency Chi.*, 707 F.3d 775, 783 (7th Cir. 2013) (holding that "[r]eassigning such tasks"—"heavy lifting or excessive bending over"—"to another employee is not considered a reasonable accommodation when reassignment of the task would equate, essentially, to reassignment of the job itself") (internal quotation marks omitted); *Peters*, 311 F.3d at 845 (holding than a proposed accommodation under which "someone else [would] do the heaviest lifting" for the plaintiff was "unreasonable because it [would] requir[e] another person to perform an essential function of [the] job") (collecting cases). Moreover, Corrales's failure to show how Westin could reduce her room credit obligations without eliminating an

13

essential function of the housekeeping position prevents her from proving that her requested accommodation is reasonable. *See Gratzl*, 601 F.3d at 680 ("An employer need not … strip a current job of its principal duties to accommodate a disabled employee."); *Ammons*, 368 F.3d at 819 ("The essential functions of [the plaintiff's] job included duties and exertion greatly exceeding the restrictions that [his] own physician placed on him. … [His] suggested accommodations would amount to a significant change in the essential functions of his job [because the limited tasks he could perform] … would account for only approximately half of [his] workday. … Therefore, [the plaintiff] could not perform the essential functions of his job even with reasonable accommodations."); *DeVito v. Chi. Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001) ("[T]he [ADA] provide[s] relief only to persons who are capable, with or without an accommodation … , to perform the essential functions of their job, which in the case of a full-time job requires that they be capable of working full time.") (citations omitted).

Corrales next suggests that indefinitely extending the temporary light duty housekeeping position Westin assigned her from October 2014 through June 2016 would be a reasonable accommodation. Doc. 46 at 10; Doc. 45 at ¶¶ 26, 32. Corrales admits, however, that her physician-directed restrictions are permanent, Doc. 45 at ¶ 32, so her accommodation request would obligate Westin to make permanent what is otherwise a temporary light duty position for recovering employees, *id*. at ¶ 22. That request is not reasonable, for the ADA does not require employers to make temporary light duty work accommodations permanent. *See Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) ("[T]he ADA does not require an employer that sets aside a pool of positions for recovering employees to make those positions available indefinitely to an employee whose recovery has run its course without restoring that worker to her original healthy state."); *DeVito*, 270 F.3d at 534 ("[T]he ADA does not require permanent

14

assignment to a temporary light-duty job … ."); *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998) ("Although the ADA provides that reassignment to a vacant position may constitute a reasonable accommodation, it does not require that employers convert temporary 'light-duty' jobs into permanent ones."); *Arce v. Chi. Transit Auth.*, 193 F. Supp. 3d 875, 892-93 (N.D. Ill. 2016) ("[T]he [employer] had no obligation … to convert the light duty positions into permanent jobs, which is significant because the record demonstrates that [the plaintiff] was never cleared, even prospectively, to return to full duty work."), *aff'd*, 738 F. App'x 355 (7th Cir. 2018). Additionally, although the record indicates that Westin allowed another housekeeper with work restrictions to serve as a lobby attendant, Doc. 51 at ¶ 60; Doc. 45-3 at 23-24, Corrales adduces no evidence of any vacant non-temporary position at Westin that could accommodate her disability. She therefore cannot show that reassignment to such a position would be a reasonable accommodation. *See Kotwica v. Rose Packing Co.*, 637 F.3d 744, 750 (7th Cir. 2011) ("[P]laintiffs, when alleging that an employer's failure to reassign them violated the ADA's anti-discrimination provisions, bear the burden of showing that there is a vacant position in existence for which they were qualified."); *see also Stern*, 788 F.3d at 291 ("An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to bump other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a new position for the disabled employee.") (internal quotation marks omitted).

In addition to her proposed accommodations, Corrales focuses on Westin's failure to meet with her to discuss the work restrictions set forth in her July 7, 2016 physician's note. Doc. 46 at 10-11; Doc. 51 at ¶ 62. Corrales correctly observes that the ADA "requires both employer and employee to engage in a flexible, interactive process" to "identif[y] reasonable

15

accommodations for a disabled employee." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). That said, any "[f]ailure of the interactive process is not an independent basis for liability under the ADA." *Severson*, 872 F.3d at 480 n.1 (internal quotation marks omitted); *see also Sansone v. Brennan*, 917 F.3d 975, 979-80 (7th Cir. 2019) ("While the interactive process is important, it is a means for identifying a reasonable accommodation rather than an end in itself. And because the process is not an end in itself, an employer cannot be liable solely for refusing to take part in it.") (citation and internal quotation marks omitted).

Because Corrales has failed to show that she could perform the essential functions of the housekeeper position with a reasonable accommodation, "whether the discussion between [Westin] and [her] was sufficiently interactive is immaterial." *Majors*, 714 F.3d at 535; *see also Stern*, 788 F.3d at 292 ("Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation.") (internal quotation marks omitted). Accordingly, regardless of any breakdown of the interactive process, Westin is entitled to summary judgment on the ADA discrimination (disparate treatment and failure to accommodate) claim because Corrales "has failed to produce adequate evidence that [s]he is a qualified individual, capable of performing the essential functions of [the housekeeping] job with or without reasonable accommodation." *Stern*, 788 F.3d at 293.

**II. ADA Retaliation**

The ADA's antiretaliation provision states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual … participated in any manner in an investigation, proceeding, or hearing under this chapter." *Rodrigo*, 879 F.3d at 243 (emphasis omitted) (quoting 42 U.S.C. § 12203(a)). To prevail on an ADA retaliation claim, a plaintiff must adduce evidence sufficient for a reasonable jury to find that: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018).

Corrales asserts that her request for an ADA accommodation and her workers' compensation claim are ADA-protected activities. Doc. 46 at 11. She is wrong as to her workers' compensation claim. Because pursuit of a workers' compensation claim is protected by the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*, not the ADA, it does not qualify as a protected activity for purposes of an ADA retaliation claim. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814-15 (7th Cir. 2015) (holding that an ADA retaliation plaintiff "must have engaged in a statutorily protected activity—in other words, [s]he must have asserted h[er] rights *under the ADA* by either seeking an accommodation or raising a claim of discrimination due to h[er] disability") (emphasis added); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) ("Employers are forbidden from retaliating against employees who raise *ADA claims* … .") (emphasis added) (construing 42 U.S.C. § 12203(a)); *see also Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012) (explaining that the "Illinois Workers' Compensation Act provides a comprehensive scheme to compensate employees injured on the job," giving rise to "a common-law cause of action for retaliatory

discharge where an employee is terminated" for "exercis[ing] [her] workers' compensation rights").

An employee's request for an ADA accommodation is protected activity for purposes of an ADA retaliation claim. *See Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018) (recognizing that the ADA prohibits "fir[ing an employee] in retaliation for her requests for accommodations"); *Preddie*, 799 F.3d at 814-15 (noting that "seeking an accommodation" is a "protected activity" under the ADA). Under the circumstances of this case, however, Corrales's ADA retaliation claim is indistinguishable from her ADA discrimination claim, as each asserts that Westin has prevented Corrales from working by failing to accommodate her disability. *Compare* Doc. 46 at 11 (Corrales submitting that her ADA retaliation claim is viable "because the disabilities and limitations suffered by Ms. Corrales are not being accommodated by [Westin,] thereby precluding her from employment"), *with id*. at 8 (Corrales arguing as to her ADA disparate treatment claim that she "suffered an adverse employment action because of her disability limitations"), *and id*. at 10 (Corrales arguing as to her ADA accommodation claim that "Westin failed to let [her] work a modified schedule with limitations on the number of rooms and extended breaks"). Where, as here, an ADA plaintiff "simply refram[es] a discrimination or accommodation claim as one for retaliation" and "is not a qualified individual for the purposes of [the] discrimination and accommodation claims," it follows that she "is not a qualified individual for [the] mislabeled retaliation claim." *Rodrigo*, 879 F.3d at 243 (holding that a plaintiff "may not make an end-run around the 'qualified individual' requirement by" claiming "that [the employer] retaliated by refusing to waive [an essential job] requirement"); *see Moore-Fotso v. Bd. of Educ. of Chi.*, 211 F. Supp. 3d 1012, 1037-38 (N.D. Ill. 2016) ("A 'failure to accommodate' cannot serve as an adverse action for an

18

ADA retaliation claim because it merely restates an underlying failure to accommodate claim.") (collecting cases), *appeal dismissed*, 755 F. App'x 587, 587-88 (7th Cir. 2019) ("While we see no reason to disturb the district court's thorough opinion, we must dismiss (rather than affirm) [the] appeal … .").

Accordingly, because Westin is entitled to summary judgment on the ADA discrimination claim due to Corrales's failure to "demonstrate that [s]he is a 'qualified individual,'" *Rodrigo*, 879 F.3d at 241, the same result obtains when her discrimination claim is repackaged as an ADA retaliation claim.

## Conclusion

Westin's summary judgment motion is granted. Judgment will be entered for Westin and against Corrales. The conclusion that Westin is not liable under the ADA does not speak to whether, though not required by law, it ought to go the extra mile to find some other position for Corrales given the truly unfortunate circumstance (a hotel guest physically attacking her) that first gave rise to her issues at work.

April 22, 2019

United States District Judge